## Case No. 10,883.

### PEASE v. The NAPOLEON.

[1 Newb. 37.][1]

District Court, D. Michigan. 1854.

ADMIRALTY — APPLICATION TO SET ASIDE SALE— LACHES.

1. Where a party, applying to a court of admiralty to set aside a sale, is guilty of inexcus-

[1] [Reported by John S. Newberry, Esq.]

able laches in making his application, the motion will not be granted.

2. As to whether there are circumstances or not, under which the court would set aside a regular sale in admiralty. Quere?

3. Where the party applying to set aside a sale, knew of the institution of the suit before sale, knew of the sale within two weeks after it took place, and yet delayed making his application for nearly six months, his laches is inexcusable.

The propeller Napoleon had been libeled in admiralty, and a decree made in favor of the libelant [George B. Pease], and for a sale of the vessel. A writ of venditioni exponas had been issued, and the vessel duly advertised and sold, the proceeds paid into court, and an order of distribution made. Subsequently, L. M. Dickens, claiming an interest in the vessel as mortgagee, appears in court, and moves that the sale of the said propeller be set aside.

Hovey K. Clark, for Dickens.

(1) All courts have power over their own process, to prevent its becoming the instrument of fraud. Act Cong. 1793, § 7 [1 Stat. 335]; Adm. Rule, 46; Poultney v. City of Lafayette, 12 Pet. [37 U. S.] 472, 475.

(2) Whenever there is fraud, actual or constructive, in the sale of property under the process of a court, it will interfere to right the wrong. 1 Story, Eq. Jur. §§ 187, 262; 1 Clarke, Ch. 101, 475; 13 Wend. 224; 3 Johns. Ch. 424; 2 Paige, 339; 1 H. W. Green, Ch. [2 N. J. Eq.] 214, 216; 26 Wend. 142.

(3) If any of these causes exist for setting aside a sale, the order will be granted, unless the party resisting shall show himself to be a bona fide purchaser without notice of prior equities. 2 White & T. Lead. Cas. Eq. pt. 1, p. 79; [Wormley v. Wormley] 8 Wheat. [21 U. S.] 421.

James V. Campbell, for respondent.

(1) No judicial sale will be set aside for mere inadequacy of price.

(2) No sale will be set aside after confirmation, unless under very extraordinary circumstances, and most of the authorities deny that it can be done at all.

(3) That an adult cannot have a sale set aside unless there has been a fraud committed by the purchaser or master, or some surprise created by the purchaser or master, whereby he was prevented from attending and bidding at the sale.

(4) That a sale will never be opened where third parties have obtained rights. Gardiner v. Schermerhorn, 1 Clarke, Ch. 101; Williamson v. Dale, 3 Johns. Ch. 290; Livingston v. Byrne, 11 Johns. 566; Requa v. Rea, 2 Paige, 339; Lansing v. McPherson, 3 Johns. Ch. 424; Tripp v. Cook, 26 Wend. 143; Aubrey v. Denny, 2 Moll. 508. If Mr. Dickens had made out a fraud of the worst kind, he could not obtain relief against any one, (1) because of lapse of time; (2) because of want of inter-

est. Adm. Rule, 40; The Avery [Case No. 672]; The New England [Id. 10,151]; Hudson v. Questen, 7 Cranch [11 U. S.] 1; Broweler v. McArthur, 7 Wheat. [20 U. S.] 58; 4 Kent, Comm. 138, and cases cited; Tannahill v. Tuttle (Sup. Ct., 1854) 3 Mich. 104.

WILKINS, District Judge. The complainant filed his libel in May, 1853, for the recovery of a debt due by the propeller, and proceeded with the cause to a decree of condemnation and sale. After publication regularly made in the state paper pursuant to the order of the court, daily for twenty days, she was sold by the marshal on the 24th of August, 1853. An intervening libel by Grant & Barron as mortgagees, was presented and filed the 27th of June, 1853, claiming a sum exceeding $1,800. Another intervening libel was presented and filed October 1st, 1853, for the balance of the proceeds then in the registry, and a decree obtained favorable to the claimant on the 26th October, 1853. Report of sale was made by the marshal on the 5th of September preceding, with confirmation and the distribution of the proceeds in liquidation of the original claim and the costs which had been incurred. These incidents in the progress of the case, with the dates of their occurrence, are all important in the determination of the motion under consideration to set aside the sale. On the 10th of March, 1854, more than six months after the sale by the marshal, and nearly the same lapse of time after the decree of distribution, Lewis M. Dickens presents his affidavit, exhibiting the following facts, on which he seeks the intervention of the court. He shows that on the 15th of October, 1852, the propeller Napoleon was jointly owned by John R. Livingston and Sheldon McKnight, the latter being the owner of one-third: that the said Livingston being indebted to the said Dickens in the sum of $1,500, mortgaged at that time his interest in the vessel to the affiant, conditioned for the payment of the said debt on the 1st of November, 1853, which was duly recorded in the office of the collector of the district of Mackinaw: that McKnight, by an agreement in writing, in which he expressly assumed to pay the debt specified to the affiant, purchased from the said Livingston in June, 1853, his two-thirds interest in the vessel, and that the said Livingston, at the same time, executed to him a bill of sale for the same: that McKnight personally attended the marshal's sale, and procured a bid for $250 in the name of Henry N. Walker: that the notice of sale, published in the Free Press, was obscure, and not calculated to attract attention: that the affiant, although aware of the libel proceedings on the part of the complainant, yet had not the remotest expectation that a sale of the vessel would be permitted: that he had no notice of the sale until the 16th of September, 1853, twenty-two days subsequent thereto, and thirty days antecedent to the decree in

favor of Cole's intervening libel for a distributive share of the proceeds of the sale.

Without intimating an opinion whether or not, or under what circumstances, this court would set aside a regular sale in admiralty, on the application of a third party interested in the vessel, I am clearly of opinion that the facts disclosed in this affidavit, would not warrant such interference. Was there a case of fraudulent collusion between McKnight and the complainant as to the institution of the original proceedings and their prosecution to the sale of the vessel, made apparent, or any ground laid to suppose such? Could a reasonable inference be drawn, that Mr. Walker in the purchase of the Grant & Barron mortgage on the 15th of July, 1853, acted as the trustee of McKnight, and also bore that relation as a bidder at the sale; or that Sheldon and Douglass were not bona fide purchasers, this court might possibly interfere. Yet, all these facts should have been brought to the notice of the court, at an earlier period; and it was certainly in the power of the affiant, by appropriate application, to have obtained from the court a record recognition of the existence of his mortgage prior to the sale, and an order that the same should be subject thereto. And at the October term after the sale, he should have moved to set it aside. His laches in the matter is inexcusable. He knew of the institution of the suit in time to intervene before sale, so that his interest might be protected. He knew of the sale within two weeks after it occurred and before its confirmation. Yet he permitted Mr. Whiting, as he alleges, to lull him into security by the advice, on which he acted, "to let the matter stand as it then was, and see how it would come out." But, apart from all this, Walker's and Sheldon's affidavits are conclusive. The first, repudiating entirely any inference that he was the trustee of McKnight, and the second, showing the fairness of his purchase and the actual cash payment of more than $8,000. Moreover the affiant, by his own statement, is not remediless. He is able to prove the agreement of McKnight to pay this mortgage, and Mr. Walker swears as to his knowledge of McKnight's circumstances, and his present ability to respond to much more than that amount. Dickens lost his lien on the vessel by his own neglect.

Motion refused.

---

PEASE (PECK v.). See Case No. 10,894.

PEASLEE (ATKINS v.). See Case No. 603.

PEASLEE (AUSTIN v.). See Case No. 666.

PEASLEE (CLARK v.). See Case No. 2,831.

PEASLEE (FLORIO v.). See Case No. 4,890.

PEASLEE (FORMAN v.). See Case No. 4,941.

PEASLEE (FOSTER v.). See Case No. 4,979.